J-A29015-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JACOB MATTHEW CHRISTINE | : | |
| | : | |
| Appellant | : | No. 337 EDA 2017 |

Appeal from the PCRA Order December 30, 2016
In the Court of Common Pleas of Northampton County Criminal Division
at No(s):  CP-48-CR-0003344-2009

BEFORE:   LAZARUS, J., PLATT*, J., and STRASSBURGER*, J.

MEMORANDUM BY LAZARUS, J.:                **FILED JANUARY 03, 2018**

Jacob Matthew Christine appeals from the order, entered in the Court of Common Pleas of Northampton County, denying his petition for relief under the Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546.  After our review, we affirm.

A jury convicted Christine of aggravated assault[1] and recklessly endangering another person.[2]  The convictions resulted from an incident that occurred in Northampton County Prison on June 8, 2009. On that date, Christine and the victim, Thomas Misero, were inmates in the prison when a confrontation between the two men occurred in Christine's cell.  While in Christine's cell, Christine cut Misero's neck and ear with a razor blade.

_____

[1] 18 Pa.C.S. § 2702(a)(1).

[2]  18 Pa.C.S. § 2705.

_____

*   Retired Senior Judge assigned to the Superior Court.

Immediately after the attack, corrections officers searched Christine's cell; only one weapon, a shank, was found in the cell, and it was hidden within Christine's bed. *See* Trial Court Opinion, 4/26/11, at 1–2.

At trial, Christine testified he was reading on his cot when one of his cellmates invited Misero inside. N.T. Trial, 10/6/10, at 44–45. Christine testified his cellmate and Misero argued about a debt, and the conversation escalated and became confrontational; Christine tried to leave the cell, but Misero was standing in the doorway. *Id*. at 45. Christine stated Misero threw a cup of hot coffee at him and a struggle ensued. Misero produced a razorblade; Christine stated he disarmed Misero, retrieved the razorblade, and accidently may have cut Misero as he left the cell. *Id*. at 46, 49. The razorblade was never found.

On November 24, 2010, the court sentenced Christine to nine to 20 years' incarceration. Christine filed post-sentence motions, which were denied; he filed a timely direct appeal on May 5, 2010. On August 30, 2013, this Court affirmed the judgment of sentence, en banc, by an equally divided court.[3] ***Commonwealth v. Christine***, 78 A.3d 1 (Pa. Super 2013) (en banc). Christine filed a petition for allowance of appeal in the Pennsylvania Supreme

---

[3] Then–President Judge Stevens did not participate in the consideration or decision in that case.

Court and, on October 27, 2015, the Court affirmed Christine's judgment of sentence. ***Commonwealth v. Christine***, 125 A.3d 394 (Pa. 2015).

On February 22, 2016, Christine filed a timely PCRA petition. The PCRA court appointed counsel and, following a hearing, denied relief on December 30, 2016. This *pro se* appeal followed.[4] Christine filed a timely Pa.R.A.P. 1925(b) statement of errors complained of on appeal, and the trial court filed a Rule 1925(a) opinion. Christine raises the following issues for our review:[5]

1. Whether the PCRA court erred in finding no violation of ***Brady v. Maryland***, 373 U.S. 83 (1963)?[6]

2. Whether the PCRA court erred in its Pa.R.Crim.P. 600 calculation?

3. Whether trial counsel was ineffective for failing to raise a Pa.R.E. 404(b) objection (Crimes, Wrongs, or Other Acts)?

4. Whether counsel was ineffective for failing to bring a ***Mooney***[7] violation claim against the Commonwealth?

_____

[4] Following a ***Grazier*** hearing, the PCRA court entered an order on February 1, 2017, granting Christine's motion to proceed *pro se.* ***Commonwealth v. Grazier***, 713 A.2d 81 (Pa. 1998).

[5] We have reworded the issues for ease of discussion.

[6] A ***Brady*** claim is cognizable on collateral appeal under the PCRA. ***See Commonwealth v. Tedford***, 960 A.2d 1, 30 n.19 (Pa. 2008); 42 Pa.C.S. § 9543(a)(2)(vi) ("The unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced.").

[7] ***Mooney v. Holohan***, 294 U.S. 103 (1935), prohibits the prosecution from obtaining a conviction through deliberate deception. In ***Brady v. Maryland***, ***supra***, the Supreme Court held that suppression by the prosecution of evidence favorable to an accused violates due process where the evidence is

5. Whether trial counsel was ineffective for failing to request a "castle doctrine"[8] jury instruction and for failing to correct jury instructions that indicated he had a duty to retreat?

6. Whether trial counsel was ineffective for failing to submit photographs of Christine's injuries to the jury?

"Our standard of review from the denial of post-conviction relief is limited to examining whether the PCRA court's determination is supported by the evidence of record and whether it is free of legal error." ***Commonwealth v. Ousley***, 21 A.3d 1238, 1242 (Pa. Super. 2011). ***See Commonwealth v. Blakeney***, 108 A.3d 739 (Pa. 2014).

Christine first argues that the prosecutor, Patricia Mulqueen, Esquire, committed a ***Brady*** violation by making "a secret deal with [] witness [Dan Rice] to change his testimony from exculpatory to inculpatory in exchange for a sentence reduction [for Rice's bank robbery conviction where Mulqueen was also the prosecutor, which was] hidden from the defense and jury." Appellant's Brief, at 30; Rule 1925(b) Statement, 2/13/17, at 1.

---

exculpatory, "irrespective of the good faith or bad faith of the prosecution." ***Id.*** at 87. The good faith, or lack thereof, by the prosecutor is immaterial because the concern is not punishment of society for misdeeds of the prosecutor, but avoidance of an unfair trial to the accused. ***Id.***, citing ***Mooney supra***. ***See Commonwealth v. Strong***, 761 A.2d 1167, 1170 (Pa. 2000). Further, the prosecutor's office is an entity and the knowledge of one member of the office must be attributed to the office of the district attorney as an entity. ***Commonwealth v. Hallowell***, 383 A.2d 909, 911 (Pa. 1978).

[8] ***See*** 18 Pa.C.S. § 505. The castle doctrine is a component of self-defense, which recognizes that a person has no duty to retreat from his or her home before using deadly force as a means of self-defense***. See Commonwealth v. Johnston***, 263 A.2d 376 (Pa. 1970); Denise M. Drake, *The Castle Doctrine: An Expanding Right to Stand Your Ground*, 39 St. Mary's L.J. 573, 584 (2008).

The PCRA court determined that Christine presented no evidence to support his allegations of a "secret deal." Christine relies on hearsay statements in Rice's *pro se* PCRA petition and Rice's subsequent amended petition filed by counsel on June 9, 2011, both of which are included in the certified record on appeal. Christine refers to that portion of Rice's *pro se* petition indicating that Investigator Christopher Naugle was present during Rice's meeting with Attorney Mulqueen, at which the sentence reduction deal was discussed. Investigator Naugle testified at Christine's PCRA hearing, at which time he denied having been present during a meeting with Rice and the prosecutor. **See** N.T. PCRA Hearing, 7/11/16, at 4-16. In fact, Investigator Naugle stated that he did not recall meeting any witnesses with Attorney Mulqueen. **Id**. at 16.

At his PCRA hearing, Christine sought to present the testimony of Attorney Mulqueen. Attorney Mulqueen requested a brief recess and brought in District Attorney John Morganelli. When PCRA counsel called Attorney Mulqueen, the District Attorney objected and directed Attorney Mulqueen not to testify and to invoke her Fifth Amendment privilege. This, Christine argues, evidences a **Brady** violation and necessitates an adverse inference.

First, we note that we are particularly troubled by Attorney Mulqueen's decision to invoke the Fifth Amendment and DA Morganelli's advice that she assert it. We recognize, however, that Christine, at his PCRA hearing, did not present evidence to support his allegation of a deal between Rice and Attorney Mulqueen that was kept from the jury in Christine's trial. Rice, who was

sentenced on his bank robbery case prior to Christine's trial, filed for PCRA relief after Christine's trial, alleging that he had agreed to testify based on Attorney Mulqueen's promise that she would "intervene on his behalf and secure a reduced sentence with the Honorable Anthony Beltrami." Rice's Amended PCRA Petition, 7/9/11, at ¶ 9. Rice also alleged, however, that his trial counsel was ineffective in that he

> affirmatively represented that [Rice] would receive the same sentence as his co-defendant of 3 to 6 years. [Rice] relied upon counsel's representation and was induced thereby to plead guilty. Trial counsel [] should have informed [Rice] that the Court had the discretion to impose a different or harsher sentence than that given to the co-defendant. [Rice] did receive a harsher sentence than the co-defendant who entered the bank and committed the actual robbery. [Rice's] role was much more limited as the driver of the getaway car. The imposition of the court's sentence of 4 to 8 years rendered petitioner's plea involuntary.

*Id*. at ¶¶ 12-14.

Our review of the timeline and the testimony of Rice's PCRA counsel, Attorney Michael Corcoran, who testified at Christine's PCRA hearing, indicate that there is no support for Christine's allegation of a "secret deal" or that Attorney Mulqueen misrepresented, at Christine's trial, the fact that no promises were made for Rice's testimony. The relevant testimony follows.

At Christine's trial, Rice testified that he saw Christine and Misero fighting, "[m]ore like a wrestling hold or whatever, but it was real brief, then it was just broke up[.]" N.T. Trial, 10/6/10, at 17. He testified that he saw Misero holding his neck and blood "everywhere[,]" and that when he asked Christine why he did this, Christine's response was "[Misero] owed him $20."

*Id*. at 18.   Notably, Rice testified that he could not be sure if Christine had anything in his hand, but that Christine asked him, prior to Rice's meeting with the investigator, if he could "say that you [saw Misero] come in to my cell . . . [a]nd asked if I could say that he had a cup of coffee or something like that." *Id.* at 22.   He continued, "I actually agreed to it . . . I was actually going to try to help him out." *Id*. at 23.[9]   Attorney Mulqueen questioned Rice further:

> Q: And that wasn't the truth?
>
> A: That wasn't even the truth. I mean he might have had a cup in his hand, I don't know.  The guy asked me if I could help him out and be a witness, and I was like all right, I'll go down there and see what the investigator has to say.
>
> Q: So why are you testifying now to something different than what you told the investigator?
>
> A: Well, I like [Misero], you know what I mean, and for him to get 50, 60 stitches.
>
> Q: **Had any promises been made to you to get you to testify here today by my office or by the Northampton County Prison?**
>
> A: **No.**

---

[9] Private Investigator John E. Stahr, Jr., who interviewed Rice on behalf of the Public Defender's Office in the instant case, reported that Rice indicated that Misero "had a cup in his hand and that he saw him walk into Christine's cell [] and that he saw a scuffle start and then someone yelled that they were fighting."  Investigative Report - Dan Rice Interview, 4/12/10.  Christine appears to argue that this was exculpatory evidence, possibly because it corroborated Christine's version of the events with respect to Misero coming into his cell, holding a cup, and that at trial Rice's testimony differed, not necessarily with respect to the cup, but to the issue of whether Christine had asked Rice to tell the investigator that that is what he saw (i.e., Misero coming into Christine's cell holding a cup).

Q: In fact, you don't wish to be here today, do you?

A: No, I don't even care for you.  I mean you sent me to prison for 8 years.

*Id.* at 23-24 (emphasis added).

More than one year after Christine's trial, Rice filed his aforementioned *pro se* PCRA petition and his counseled, amended petition, alleging that there was a deal between Attorney Mulqueen and himself in exchange for his testimony.  Christine points to the allegations in Rice's petitions, and claims they suggest Attorney Mulqueen misrepresented on the record the fact that she had not reached a deal with Rice, as explained by the PCRA court in this matter, "that in open court during Mr. Christine's trial she represented [that] did not exist, which does suggest that she committed perjury and misrepresented a material fact in the trial.  So it's a very serious allegation, and I understand that."  N.T. PCRA Hearing, 5/11/16, at 14. *See* N.T. Trial, *supra* at 23-24.  The PCRA court determined that Christine offered no evidence at his PCRA hearing to support this claim and, after our review, we are constrained to agree.

Christine, without making a record or establishing predicate testimony through Rice, sought to cross-examine Attorney Mulqueen.  The PCRA court, noting that the burden of proof to prosecute a PCRA petition is on the petitioner, stated that "if the only proof you have is to call the assistant district attorney as of cross, you have no proof."  N.T. PCRA Hearing, 5/11/16, at 18.  Defense counsel sought to admit Rice's PCRA petition as evidence at

Christine's PCRA hearing. The PCRA court, pointing out that this was hearsay, continued the matter for two months to allow Christine to obtain witnesses, in particular, Rice. *Id*. at 17.

Two months later, at his continued PCRA hearing, Christine failed to present Rice to testify as to the allegations in his PCRA petition with respect to a deal with Attorney Mulqueen.[10] As stated above, Investigator Naugle testified, although *his testimony did not support Christine's allegations*. Christine also called Attorney Corcoran to testify. As noted above, Attorney Corcoran, a former public defender, had represented Rice on his PCRA petition with respect to his bank robbery conviction, in which Rice had driven the getaway car. Rice's PCRA petition alleged that when he entered his guilty plea to that crime, he was under the impression he would receive the same sentence as his co-defendant, who received 3 to 6 years, while Rice was sentenced to 4 to 8 years. Attorney Corcoran also testified that "[i]n his petition, [Rice] also claimed that he was entitled to reconsideration of his sentence because he had helped the Commonwealth out in . . . Commonwealth versus Christine." N.T. PCRA Hearing, 7/11/16, at 62.

The court acknowledged that Rice believed that there was a sentence bargain when he filed his PCRA claim, but "his belief is all hearsay and he's

---

[10] At the hearing, Christine presented Barry Golezeski, who testified that he was hired by Christine's family to locate Rice. He stated that, after ten to twelve hours of investigative work, he was unable to locate Rice. N.T. PCRA Hearing, 7/11/16, at 82-84. Rice's PCRA petitions are included in the certified record in this case; however, they remain allegations and not proof of Christine's claims.

not present to testify about it." *Id.* at 71. Attorney Corcoran's testimony

sheds some light on this:

> Q: Mr. Corcoran, what was the eventual outcome of [Rice's] PCRA?
>
> A: In September of 2011, Ms. Mulqueen and I appeared before Judge Beltrami and the relief sought at that point was to get him the benefit of what he perceived to be a bargain, and there was a 3 to 6 year sentence.
>
> THE COURT: That was the understanding. That's exactly what you said, 3 to 6. He wanted a 3 to 6 year sentence because he believed he was due the same sentence as his co-defendant who actually went into the bank and robbed them.
>
> MR. CORCORAN: That was part of it, yes.
>
> THE COURT: Okay. And he got that at the PCRA hearing?
>
> MR. CORCORAN: He did, Your Honor.
>
> THE COURT: And he was satisfied.
>
> MR. CORCORAN: Yes, he wanted it to run concurrent, but Judge Beltrami did not entertain that request, but he was otherwise satisfied with the sentence reduction.
>
> Q: And did Ms. Mulqueen tell you why she was trying to do this sentence reduction?
>
> A: **I remember approaching her about it after I was assigned the matter, and basically outlined her some of the representations in his PCRA, and asked whether she would be amenable to the sentence reduction. And she indicated that his testimony was helpful in the matter of Commonwealth versus Christine, and that she would work with me to achieve the sentence reduction.**
>
> Q: **Did she admit or deny that there was a deal between her and Dan Rice?**
>
> A: **That I don't recall.**

*Id*. at 72-73, 77-78 (emphasis added).  Again, without more, we are unable to find that this establishes a prior, secret deal between Rice and Attorney Mulqueen that Attorney Mulqueen misrepresented at Christine's trial.

At the conclusion of the hearing, the court reviewed Rice's guilty plea colloquy on the record, stating:

> And on Page 4, it says: "I've also been told that there is a plea as to the sentence in this case.  And the sentence that has been negotiated by the Commonwealth and your attorney is 4 to 8 years, is that our understanding of what the sentence is in this case?"  Defendant. "Yes."  Then the Court said:  "Also, now I understand there's going to be a negotiation that there will be no charges against your girlfriend arising in any alleged conduct in relation to your alibi defense?"  Defendant: "Yes."  "Is that your understanding and part of your belief also?  "Yes**."  Are there any other promises?"  Defendant said no.**  That's on Page 5.  Then on Page 20 Judge Beltrami opposed the sentence.  Mr. Rice said:  "I'm just asking you to take into consideration to make it concurrent."  I mean to apologize for my behavior.  I have 2 years in prison already.  I'm going to serve another 4. I'm just trying to" – and he asks for the 4 to 8 year sentence to run concurrent to what he's serving.  Judge Beltrami said no.
>
> **If your theory is that at the time that Mr. Rice had some negotiated favorable sentence from Ms. Mulqueen, you would think that it would be there in the record somewhere. . . . So your theory is because Mr. Rice believed that he should get sympathy also after he had been sentenced because he testified in a different trial, and later Ms. Mulqueen relented and agreed that she would have no opposition to a lesser sentence for him, that that is an indication that the presentation Ms. Mulqueen made at trial with the negotiated plea with regard to his sentence is somehow false?**

*Id*. at 93-94 (emphasis added). Christine's PCRA counsel responded that that was an indication that the jury was "not given the whole story." *Id*. at 94. We disagree.

The fact that Rice alleged in his petition that there was a deal, and the fact that Rice ultimately received his requested PCRA relief, does not prove Christine's allegation. The PCRA court reviewed Rice's PCRA filings, Rice's plea colloquy, and Rice's PCRA counsel's testimony. The PCRA court concluded that all that was established was that Rice *alleged* a prior deal and that Attorney Mulqueen did not oppose Rice's request for a reduced sentence when she was approached, *after Christine's trial*, by Attorney Corcoran. There was no proof that Attorney Mulqueen misrepresented, at Christine's trial, the fact that no promises were made to Rice prior to Christine's trial.

We conclude, therefore, that the record supports the PCRA court's finding that Christine, who had the burden of proof, "presented no competent or credible evidence in support of his bald theory that the ADA lied during the trial." PCRA Court Opinion, 12/30/16, at 8. *See Blakeney*, *supra* (we review ruling by PCRA court to determine whether it is supported by record and free of legal error); *Ousely*, *supra*; *see also Commonwealth v. Chmiel*, 30 A.3d 1111, 1131 (Pa. 2011) (mere conjecture as to agreement between prosecution and witness is not sufficient to establish *Brady* violation); PCRA Court Opinion, *supra* at 4-8 (no testimony proffered at Christine's PCRA hearing that suggested anything improper or nefarious occurred during trial).

Next, Christine argues that trial counsel was ineffective for failing to seek dismissal under Rule 600. Christine claims the trial court violated Rule 600 because he was not brought to trial until October 5, 2001, 448 days after the July 14, 2009 filing of the information. *See* Pa.R.Crim.P. 600.

> Our standard of review when faced with a claim of ineffective assistance of counsel is well settled. First, we note that counsel is presumed to be effective and the burden of demonstrating ineffectiveness rests on appellant. In order to prevail on a claim of ineffective assistance of counsel, a petitioner must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining that no reliable adjudication of guilt or innocence could have taken place. A petitioner must show (1) that the underlying claim has merit; (2) counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors or omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different. The failure to prove any one of the three prongs results in the failure of petitioner's claim.

**Commonwealth v. Rivera**, 10 A.3d 1276, 1279 (Pa. Super. 2010) (internal citations omitted). **See also Commonwealth v. Natividad**, 938 A.2d 310, 321 (Pa. 2007); **Commonwealth v. Andrews**, 158 A.3d 1260, 1263 (Pa. Super. 2017).

Rule 600 provides, in relevant part, as follows:

Rule 600. Prompt Trial.

. . .

- 13 -

(A)(3)  Trial in a court case in which a written complaint is filed against the defendant, when the defendant is at liberty on bail,[11] shall commence no later than 365 days from the date on which the complaint is filed.

. . .

(C)  In determining the period for commencement of trial, there shall be excluded therefrom:

. . .

(2)  any period of time for which the defendant expressly waives Rule 600;

(3)  such period of delay at any stage of the proceedings as results from:

(a) the unavailability of the defendant or the defendant's attorney;

(b) any continuance granted at the request of the defendant or the defendant's attorney.

. . .

(G) If the court, upon hearing, shall determine that the Commonwealth exercised due diligence and that the circumstances occasioning the postponement were beyond the control of the Commonwealth, the motion to dismiss shall be denied and the case shall be listed for trial on a date certain. . . . If, at any time, it is determined that the Commonwealth did not exercise due diligence, the court shall dismiss the charges and dismiss the defendant.

Pa.R.Crim.P. 600.  Pursuant to Rules 600(A) and (C), the mechanical and adjusted run dates are calculated as follows:

---

[11] **See Commonwealth v. Colon**, 87 A.3d 352, 358 n.4 (Pa. Super. 2014) ("Longstanding case law has interpreted Rule 600(A)(3) to apply in circumstances where a defendant is incarcerated on other charges has not be arrested on the new charges forming the basis of the rule 600 claim, and is therefore, technically, at liberty on those new charges.").

- 14 -

The mechanical run date is the date by which the trial must commence under Rule 600. It is calculated by adding 365 days (the time for commencing trial under Rule 600) to the date on which the criminal complaint is filed. [T]he mechanical run date can be modified or extended by adding to the date any periods of time in which delay is caused by the defendant. Once the mechanical run date is modified accordingly, it then becomes an adjusted run date. If the defendant's trial commences prior to the adjusted run date, we need go no further.

If, however, the defendant's trial takes place outside of the adjusted run date, we must determine, pursuant to Rule 600(G), whether the delay occurred despite the Commonwealth's due diligence. To this end, we have fashioned the "excusable delay" doctrine. Excusable delay is a legal construct that takes into account delays which occur as a result of circumstances beyond the Commonwealth's control and despite its due diligence. Our Supreme Court has made clear that the Commonwealth must do everything reasonable within its power to guarantee that a trial begins on time. Moreover, the Commonwealth bears the burden of proving that its efforts were reasonable and diligent.

Due diligence is a fact-specific concept that must be determined on a case-by-case basis. Due diligence does not require perfect vigilance and punctilious care, but rather a showing by the Commonwealth that a reasonable effort has been put forth. Due diligence includes, among other things, listing a case for trial prior to the run date, preparedness for trial within the run date, and keeping adequate records to ensure compliance with Rule 600.

A period of delay that is excusable pursuant to Rule 600(G) results in an extension to the adjusted run date.

*Commonwealth v. Ramos*, 936 A.2d 1097, 1102–03 (Pa. Super. 2007) (en banc) (internal citations, quotation marks, and brackets omitted).

Here, the mechanical run-date is July 14, 2010. Christine was not tried until October 5, 2010, 82 days beyond the run-date. The court, however, found 122 days of excludable or excusable delay: outstanding defense pretrial motions, agreed-upon continuances, and preliminary hearing delay, none of

- 15 -

which amounted to a lack of due diligence on the part of the Commonwealth. Based on our review of the docket, we agree with the court's calculation and its finding that there was no Rule 600 violation. **See** PCRA Opinion, **supra** at 11-15. Trial counsel, therefore, was not ineffective for failing to raise this claim. **Rivera**.

In his third issue, Christine claims trial counsel was ineffective for failing to raise a Pa.R.E. 404(b)[12] objection with respect to admission of the shank at trial. This issue has been previously litigated.

To be eligible for PCRA relief, one must plead and prove that an issue has not been previously litigated. 42 Pa.C.S. § 9543(a)(3). An issue has been previously litigated where the highest appellate court in which review was available as of right has ruled on the merits of the issue. 42 Pa.C.S. §

---

[12] Rule 404(b) provides:

> **(b) Crimes, Wrongs, or Other Acts.**
>
> (1) Prohibited Uses. Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character
>
> (2) Permitted Uses. The evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.

Pa.R.E. 404(b). We note that Rule 404(b)(2)'s list of permissible uses is not intended to be exhaustive. "[T]he range of relevancy outside the Rule's ban on propensity is almost infinite." *Ohlbaum on Pennsylvania Evidence* (2016 edition*)*, at § 404.24, citing **Commonwealth v. Claypool**, 495 A.2d 176 (Pa. 1985).

9544(a)(2). It is evident from a reading of the Pennsylvania Supreme Court's October 27, 2015 opinion, that this issue was previously litigated within the meaning of the PCRA.

Christine filed a motion *in limine* to exclude the shank from evidence, arguing it was irrelevant and would cause undue prejudice by confusing the jury. **See** N.T. Trial, 10/5/10, at 13. The Commonwealth conceded that the shank was not the instrument used in the attack. **Id.** The trial court ruled the shank admissible under the similar-weapon exception because it showed Christine had "access to a weapon and that he had the ability to fashion a homemade weapon from objects in the prison." Trial Court Opinion, 4/26/11, at 6-7. Additionally, the court found the shank was relevant because it "tend[ed] to show [Christine] had knowledge and familiarity with prison-made weapons and could conceal them in his prison cell[.]" **Id.** at 8. The court found the evidence "relevant and that the probative value outweighed the prejudicial [effect]." **Id.**

As noted above, on direct appeal an equally divided *en banc* panel affirmed the trial court on the issue of the admissibility of the shank. The Supreme Court granted allowance of appeal to determine whether the trial court erred or abused its discretion when it permitted the Commonwealth to admit the shank. Although the Supreme Court determined that the shank was not admissible under the "similar-weapon exception," it ultimately found that the trial court acted within its discretion in admitting the shank to demonstrate defendant's ability to fashion a homemade weapon. The Court stated: "[T]he

Commonwealth laid a foundation of the similarity between the handles on the shank and razorblade, which, as admittedly generic that may be, the trial court found demonstrated [Christine's] familiarity with and ability to fashion jailhouse weapons, which one cannot say is irrelevant." **Christine**, 125 A.3d at 401. The Court concluded that "the trial court did not abuse its discretion or commit reversible error by admitting relevant evidence," and stated that our Court's en banc opinion in support of affirmance properly determined that "the shank was relevant under alternative theories of admissibility." **Id.**

Christine attempts to evade the previously litigated obstacle, claiming trial counsel was ineffective because Justice Saylor's dissent in the Supreme Court decision stated that had a Rule 404(b) objection been made, Christine would have had the benefit of a more "discerning evaluation of probative value versus prejudice[.]" **Id.** at 408. This claim is unavailing. The requirement that a claim for PCRA relief not be previously litigated would be rendered a nullity if this Court could be compelled to revisit every issue decided on direct appeal upon assertion that a dissenting view be applied.

Next, Christine claims counsel was ineffective for failing to bring a **Mooney** violation claim against the Commonwealth. This claim is waived. Christine did not raise this issue in his PCRA petition, 42 Pa.C.S. § 9543(a)(3), 9544(b), and, furthermore, the argument on this issue is undeveloped and unintelligible. **See** Appellant's Brief, 60-63. **See also Commonwealth v. Tedford**, 960 A.2d at 12-13 (claim that has been waived is not cognizable

under the PCRA); **Commonwealth v. Clayton**, 816 A.2d 217, 219-20 (Pa. 2002) (issue waived if not raised in PCRA petition).

In his fifth issue, Christine claims trial counsel was ineffective for failing to request a "castle doctrine" jury instruction, 18 Pa.C.S. § 505, and failing to submit photographs of his injuries to the jury. We note, first, that section 505 was amended on August 27, 2011; this amendment, which expanded the definition of "castle" to include one's dwelling, residence, occupied vehicle or place of work, was not in effect at the time of Christine's trial. Moreover, there is no precedent for extending this doctrine to a prison cell. In any event, we conclude that the PCRA court properly disposed of this issue in its opinion. We rely on that disposition to resolve this claim. **See** PCRA Court Opinion, 12/30/16, at 15-17.

In his final claim, Christine argues that trial counsel was ineffective for failing to present to the jury five black and white photographs of Christine's injuries.[13] Christine argues these photographs show defensive wounds that he suffered as a result of the victim's attack. Appellant's Brief, at 67. Christine

---

[13] Christine presents a layered ineffectiveness claim, stating PCRA counsel was ineffective for failing to raise trial counsel's ineffectiveness. Appellant's Brief, at 67. This explains why the PCRA court did not address the issue in its opinion. Christine did, however, present this claim in his Rule 1925(b) statement, but the PCRA court relied on its opinion denying PCRA relief to dispose of Christine's claim. **See** Pa.R.A.P. 1925(a) Statement ("Having received a new fling -- Notice of Appeal – dated January 19, 2017, and filed January 25, 2017, we once again reaffirm that the support for our Order can be found in our Order denying PCRA relief filed on December 30, 2016.").

acknowledges that "the injuries are minor," but argues that they corroborate the fact that he was defending himself. *Id.*

We agree with the Commonwealth's assessment that these photographs are fairly indecipherable. *See* Appellant's Exhibits and Appendices, Exhibit A. Moreover, Christine has failed to establish that counsel did not have a tactical reason for not presenting the pictures, not only because they are unclear, but because they would contrast significantly with the victim's life-threatening injuries. *Rivera*, *supra* (counsel is presumed effective and burden to establish otherwise is on appellant). Further, we are not convinced that Christine was prejudiced by counsel's failure to present the photographs as both parties acknowledged that there was a physical altercation. The photographs would have been of dubious value. Christine has not established that there is a reasonable probability that, but for counsel's failure to present the photographs, the outcome of the proceeding would have been different. *Commonwealth v. Cox*, 863 A.2d 536, 546 (Pa.2004). We conclude, therefore, that this claim is meritless. *See Rivera*, *supra*; *see also Commonwealth v. Paddy*, 15 A.3d 431, 443 (Pa. 2011) (if petitioner cannot prove underlying claim of trial counsel ineffectiveness, petitioner's derivative claim of appellate counsel ineffectiveness fails).

We, therefore, affirm the PCRA court's order denying relief, and we direct the parties to attach a copy of the Honorable Stephen G. Baratta's opinion in the event of further proceedings.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/3/2018

DA

IN THE COURT OF COMMON PLEAS OF NORTHAMPTON COUNTY, PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA ) NO. 3344-2009
)
v. )
)
) **Appendix**
JACOB CHRISTINE, )
) **2**
Defendant. )

## ORDER OF COURT

AND NOW, this **30** day of December 2016, it is hereby **ORDERED** that Defendant's

Petition for Post Conviction Relief (PCRA) is **DENIED**.

## STATEMENT OF REASONS

### Facts and Procedural History

Defendant, Jacob Christine, was convicted of Aggravated Assault and Recklessly

Endangering Another Person by a jury on October 7, 2010. However, the jury found Defendant

not guilty of Attempted Criminal Homicide. Defendant was sentenced on November 24, 2010,

to 108-240 months incarceration on the Aggravated Assault count and 1-2 years incarceration on

the Recklessly Endangering Another Person count. The Aggravated Assault sentence runs

consecutively to Defendant's Lehigh County sentence and the Recklessly Endangering sentence

runs concurrently with the Aggravated Assault sentence.

The convictions resulted from an incident that occurred in Northampton County Prison

(NCP) on June 8, 2009. On that date, the Defendant and the victim, Thomas Misero, were

inmates in NCP when a confrontation between the two men occurred in the Defendant's cell in

Unit B-2. The cell housed 8 inmates in four rows of bunk beds. While in the Defendant's cell,

the Defendant was alleged to have slashed Mr. Misero's neck and ear with a razor blade. Immediately after the attack, corrections officers searched the Defendant's cell. Only one weapon, a shank, was found in the cell. It was hidden within the Defendant's bed.

Interestingly, the Defendant testified at trial that the victim came into his cell armed with a razor blade and attacked the Defendant. The Defendant claimed that he successfully disarmed the victim, picked up the razor from the floor and then unintentionally sliced the victim when the victim continued to threaten the Defendant. Even though the Defendant was the last person to have control of the weapon, it has never been located. We also note that there were no injuries suffered by the Defendant.

The Defendant was convicted after a jury trial on October 7, 2010, of Aggravated Assault and Recklessly Endangering Another Person. Apparently, the jury rejected the Defendant's claim of self-defense.

The Defendant pursued post-sentence motions and an appeal through the appellate courts. The Pennsylvania Supreme Court issued an Order affirming the Defendant's conviction on January 27, 2016.

Defendant's First PCRA was filed on February 22, 2016. Several conferences and hearings were scheduled. The final PCRA hearing was held July 11, 2016.

Thereafter the Defendant and the Commonwealth filed Briefs.

The Defendant's PCRA claims can be summarized as (1) prosecutorial misconduct for failing to disclose a sentencing agreement with an eyewitness to the alleged assault; (2) ineffective assistance of counsel for failing to raise a 404(b) objection; (3) ineffective assistance of counsel for failing to pursue a claim for violation of Pennsylvania Rule of Criminal

2

Procedure 600; (4) ineffective assistance of counsel for failing to pursue a jury charge for "the castle defense;" and (5) ineffective assistance of counsel for failing to raise an objection to an alleged defective jury charge.

## Legal Standard

Counsel is presumed to be effective; the burden of proving otherwise rests with the petitioner. See Commonwealth v. Cox, 983 A.2d 666, 678 (Pa. 2009). Generally, "where matters of strategy and tactics are concerned, counsel's assistance is deemed constitutionally effective if he chose a particular course that had some reasonable basis designed to effectuate his client's interest." Commonwealth v. Puksar, 951 A.2d 267, 277 (Pa. 2008). Further, "[c]ounsel's performance is presumed constitutionally adequate, and will be deemed ineffective only upon a petitioner's three-pronged showing that counsel's ineffectiveness was such that, 'in the circumstances of the particular case, [it] so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." Commonwealth v. Dennis, 950 A.2d 945, 954 (Pa. 2008) (quoting Commonwealth v. Rios, 920 A.2d 790, 799 (Pa. 2007)).

In order for a petitioner to prevail on his claims of ineffective assistance of counsel, the petitioner must plead and prove, by the preponderance of the evidence, three elements: "(1) the underlying legal claim has arguable merit; (2) counsel had no reasonable basis for his or her action or inaction; and (3) [the petitioner] suffered prejudice because of counsel's action or inaction." Commonwealth v. Hutchison, 25 A.3d 277, 285 (Pa. 2011) (citing Commonwealth v. Pierce, 527 A.2d 973 (Pa. 1987)). The failure of a petitioner to satisfy any of the prongs set forth above requires a rejection of the ineffectiveness claim. See Dennis, 950 A.2d at 954.

3

Under the first prong, if a claim lacks merit, the court's inquiry ceases, as counsel will not be deemed ineffective for failing to pursue a baseless or meritless issue. See Commonwealth v. Johnson, 588 A.2d 1303, 1305 (Pa. 1991). In order to prove the second prong of this test ("the Pierce standard"), the "reasonable basis" prong, a petitioner must prove that "an alternative not chosen offered a potential for success substantially greater than the course actually pursued." Hutchison, 25 A.3d at 285 (citing Commonwealth v. Williams, 899 A.2d 1060, 1064 (Pa. 2006). In order to establish the third prong of the test, a petitioner must prove "that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's action or inaction." Id.

The petitioner's abstract allegations of ineffectiveness will not be considered. See Commonwealth v. DeHart, 650 A.2d 38, 43 (Pa. 1994). Instead, "a petitioner must allege actual prejudice and be able to identify a specific factual predicate that demonstrates how a different course of action by prior counsel would have better served his interest." Id. Further, "an evaluation of counsel's performance is highly deferential, and the reasonableness of counsel's decision cannot be based upon the distorting effects of hindsight." Commonwealth v. Basemore, 744 A.2d 717, 735 (Pa. 2000).

**Discussion**

1.  **Prosecutorial Misconduct**

Mr. Christine alleges that at trial, the Assistant District Attorney (hereinafter, ADA) misrepresented or lied to the jury when she stated that she had provided no special favor to a witness, Daniel Rice, in return for Rice's favorable testimony. Specifically, Mr. Christine argues that ADA Mulqueen offered Daniel Rice sentencing relief that she denied or failed to

4

disclose during the trial.

Mr. Christine proffered no evidence whatsoever to support this claim.

The record established that at the time that Daniel Rice testified, he had already pled guilty for participation in an unrelated charge - a bank robbery in which Mr. Rice was the alleged lookout. When Mr. Rice appeared for sentencing before the Honorable Anthony Beltrami on September 15, 2010, Judge Beltrami accepted a negotiated sentence bargain in which Mr. Rice agreed to a 4 to 8 year sentence in return for immunity for his girlfriend for any involvement she may have had with his criminal matter. Judge Beltrami provided Mr. Rice with the sentence bargain on September 15, 2010. At sentencing, Mr. Rice acknowledged that he received the benefit of his negotiated bargain. It should also be noted that Rice's co-defendant, the actual bank robber, received a 3 to 6 year state sentence.

Thereafter, Mr. Rice agreed to testify at Mr. Christine's October 2010 trial on behalf of the Commonwealth. Apparently, Mr. Rice was a witness to the prison assault perpetrated by Mr. Christine. During the trial, Mr. Rice indicated that he spoke with ADA Mulqueen and was hoping for consideration in return for his testimony. However, Mr. Rice also testified that he had not been offered and/or promised anything in return for his testimony.

Thereafter, Mr. Rice filed a PCRA on April 8, 2011, in which he raised three complaints (1) he got a 4 to 8 year sentence when he thought that his sentence bargain should have been 3 to 6 years; (2) ADA Mulqueen promised him a sentence reduction in return for his testimony in the [Christine] trial, but he received no reduction; and (3) Mr. Rice sought the opportunity to have his sentence reconsidered. Mr. Rice's PCRA counsel was Michael Corcoran, Esq.

Mr. Christine called Mr. Corcoran as a witness at this PCRA hearing. Mr. Corcoran

5

testified that after he was appointed to represent Daniel Rice, he approached ADA Mulqueen with the proposal that Mr. Rice receive PCRA relief in the form of a new sentence of 3 to 6 years (which was the same sentence that his co-defendant received). ADA Mulqueen apparently agreed to Mr. Corcoran's proposal. Counsel presented the agreement to Judge Beltrami, who accepted the resolution at the PCRA proceeding held on September 30, 2011. In return for the reduction, Mr. Rice withdrew all PCRA claims.

There was absolutely no testimony proffered at Mr. Christine's PCRA hearing which suggested that anything improper or nefarious occurred during the Christine trial. In fact, the various inter-related records corroborate the testimony presented during the Christine trial, and the representations made by ADA Mulqueen - that nothing had been offered to Rice in exchange for his testimony.

Interestingly, at the initial PCRA hearing, Mr. Christine's PCRA counsel proffered that ADA Mulqueen lied on the record and also suborned perjury on the record. However, PCRA counsel had no evidence and represented the same. Still, PCRA counsel wanted to call ADA Mulqueen as a witness at Mr. Christine's PCRA hearing.

ADA Mulqueen was rightfully incensed at the bald accusations. She asked for a brief recess in order to get another DA to come into the Courtroom if she was going to be a witness. She returned shortly with the District Attorney, John Morganelli. When PCRA counsel sought to call ADA Mulqueen, Mr. Morganelli objected, indicated that he directed ADA Mulqueen not to testify and to take the Fifth Amendment. ADA Mulqueen also indicated that she was invoking her right under the Fifth Amendment not to testify. As a result, we did not require ADA Mulqueen to testify.

6

Undeterred and without any legal authority, PCRA counsel requested that we draw an inference that ADA Mulqueen actually committed crimes by falsely presenting assertions that she had not promised specific benefits to Daniel Rice and that she suborned perjury by having Mr. Rice testify falsely that he had not been promised anything in return for his testimony.

We refuse to do so. Frankly, we found the actions of PCRA counsel to be offensive, unsupported by any factual record, and lacking any logic or reasonableness as far as legal strategy.

The Fifth Amendment right against self-incrimination, as applied to the states via the due process clause of the Fourteenth Amendment, precludes the trier of facts from drawing a negative inference from a Defendant's failure to take the stand in his own defense or for exercising his Constitutional privilege against self-incrimination. Griffin v. California, 380 U.S. 609, 85 S.CT. 1229, 14 L.Ed. 2d 106 (1965).

In this matter, Ms. Mulqueen was not a Defendant facing criminal prosecution; however, we also note that the bald accusations by Defense Counsel accuse the ADA of felony perjury charges. It is a rather hybrid situation, but we have chosen to evaluate this claim under the body of law applied in civil proceedings. Pennsylvania has allowed an adverse inference to be drawn against a party who invokes the privilege against self-incrimination in civil proceedings, such as workers compensation cases. See Frompovicz v. W.C.A. B. (Palsgrove), 642 A.2d 638 (Pa.Cmmlth. 1994). However, Frompovicz indicates that the inference is permissive, rather than mandatory, by the Court's use of the work "may". See Id. at 641. Thus, it is a discretionary determination by the Court. However, secondly and more importantly, when a negative inference is drawn in civil matters from a parties' invocation of the Fifth Amendment privilege,

7

the inference itself does not constitute substantial, competent evidence to support any finding of fact. See Harmon v. Mifflin County School District, 713 A.2d 620 (Pa. 1998); Petrone v. Unemployment Compensation Board of Review, 557 A.2d 1118 (Pa.Commwlth. 1989). Rather, the Commonwealth Court has held that the negative inference can only go the credibility of evidence introduced by the party with the burden of proof. See Harring v. Unemployment Compensation Board of Review, 452 A.2d 914 (Pa. Commwlth. 1982). In other words, in this matter, Mr. Christine had the burden of proof. He presented no competent or credible evidence in support of his bald theory that the ADA lied during the trial. He had the opportunity to call witnesses in support of this theory and was unable to present any evidence of improper activity. As a result, Defense Counsel wished to engage in a fishing expedition in an effort to embarrass the ADA by accusing the ADA of lying and committing perjury without one scintilla of evidence.

The claim related to prosecutorial misconduct for the failure to disclose evidence related to the alleged agreement that witness Rice would receive a sentence reduction is analyzed under the standard of Brady v. Maryland, 373 U.S. 83 (1963), which requires that the Court find that under the circumstances of the case, the failure to disclose the evidence undermined the truth determining process which entitles the Defendant to obtain Post-Conviction Relief in the form of a new trial.

This first PCRA claim fails because Mr. Christine and PCRA Counsel had no evidence whatsoever to support the theory absent counsel's bald insult, accusing the ADA of committing a felony by lying on the record and suborning perjury of a witness called during the trial.

8

## 2. Trial Counsel failed to raise PA. Rule of Evidence 404(b) Objection

This is a rather interesting legal argument regarding the admission of a shank. After the assault in which Mr. Christine was charged with slashing the victim's neck with a cutting instrument, the correction officers searched his cell in an attempt to locate the weapon or instrument used to cut the victim's neck. During the search of Mr. Christine's cell, the correction officers found a "shank-like" weapon in his mattress. However, the consensus was that the weapon found in Mr. Christine's mattress was not the weapon used to injure the victim. Ultimately, the correction officers were unable to find the weapon used by Christine to slice the victim's neck.

At trial, the Commonwealth sought to introduce the shank located during the search, to demonstrate the Defendant's access to weapons and/or ability to fashion weapons.

Trial counsel objected, arguing that the knife was irrelevant and if relevant, that the probative value did not outweigh the prejudicial value. We overruled the objection and permitted the shank to be introduced as its introduction was probative to the fact that the Defendant did have access to the type of weapon that was used in this attack.

Our evidentiary ruling was affirmed by the Supreme Court as the Supreme Court found that the appellant could not show that we had abused our discretion in admitting the Defendant's shank. See Commonwealth v. Christine, 125 A.3d 394 (Pa. 2015).

Interestingly, there was a dissent authored by then Justice Saylor which discussed the availability of a 404(b) objection to trial counsel and noted that it was not raised of record. No other Justice joined Judge Saylor's dissent. While Justice Saylor discussed the nature of a 404(b) objection, he noted that should a 404(b) objection been raised, the appellant "would have

9

been entitled to a more discerning evaluation of probative value versus prejudice". Id. at 404 - 405

It is important to note that Justice Saylor did not issue a final conclusion on the admissibility of the shank, noting: "As to the admissibility of the shank found in appellant's cell, I would forego addressing the issue, because I do not believe that the salient questions have been framed and presented adequately." Id.

The claim that trial counsel was ineffective for failing to properly object to the admission of the shank fails because Trial counsel did object to the admission of the shank and argued vociferously that it was not relevant and further that the probative value did not outweigh the prejudicial value. Even though trial counsel did not specifically reference 404(b) as the basis for the objection, counsel and the court did discuss the very specific and discerning evaluation of probative value versus prejudicial. Thus, proper facts and analysis were raised by trial counsel and discussed by the Court prior to the admission of the shank. The record was reviewed by the Supreme Court and the majority of the Court, absent Justice Saylor, agreed that the shank was properly admissible. Therefore, this claim has been previously litigated and finally resolved. Mr. Christine wants another bite at the apple to rehash the same argument of probative versus prejudicial in his PCRA. The Supreme Court's opinion closed the door in this matter. Further, we find that even if the Supreme Court's opinion is not the last word, that trial counsel ably argued the appropriate evidentiary standard in support of her objections. Therefore, there can be no finding of ineffectiveness.

10

### 3.   Rule 600 claim

Pennsylvania Rule of Criminal procedure 600 provides in pertinent part:

(A) Commencement of Trial; Time for Trial
(1) For the purpose of this rule, trial shall be deemed to commence on the date the trial judge calls the case to trial, or the defendant tenders a plea of guilty or *nolo contendere*.
(2) Trial shall commence within the following time periods.
(a) Trial in a court case in which a written complaint is filed against the defendant shall commence within 365 days from the date on which the complaint is filed.
***
(D) Remedies
(1) When a defendant has not been brought to trial within the time periods set forth in paragraph (A), at any time before trial, the defendant's attorney, or the defendant if unrepresented, may file a written motion requesting that the charges be dismissed with prejudice on the ground that this rule has been violated.

The Supreme Court provides a detailed analysis of Pa.R.Cr.P. 600 in Commonwealth v.

Bradford, 46 A.3d 693 (Pa. 2012):

> To protect the defendant's speedy trial rights, Rule 600 ultimately provides for the dismissal of charges if the Commonwealth fails to bring the defendant to trial within 365 days of the filing of the complaint (the " mechanical run date"), subject to certain exclusions for delays attributable to the defendant. Pa.R.Crim.P. 600(A)(3), (G). Conversely, to protect society's right to effective prosecution prior to dismissal of charges, "rule 600 requires the court to consider whether the commonwealth exercised due diligence, and whether the circumstances occasioning the delay of trial were beyond the Commonwealth's control." *Selenski,* 994 A.2d at 1088. If the Commonwealth exercised due diligence and the delay was beyond the Commonwealth's control, "the motion to dismiss shall be denied." Pa.R.Crim.P. 600(G). The Commonwealth, however, has the burden of demonstrating by a preponderance of the evidence that it exercised due diligence. *See Browne,* 584 A.2d at 908. As has been oft stated, "[d]ue diligence is fact-specific, to be determined case-by-case; it does not require perfect vigilance and punctilious care, but merely a showing the Commonwealth has put forth a reasonable effort." *Selenski,* 994 A.2d at 1089. "If, at any time, it is determined that the Commonwealth did not exercise due diligence, the court shall dismiss the charges and discharge the defendant." Pa.R.Crim.P. 600(G).
> Id. at 701 -702

Mr. Christine raised a Rule 600 claim in his pro se filing.   At the PCRA hearing, PCRA

11

counsel, on the record, attempted to withdraw the claim. Mr. Christine objected to his counsel's attempt to do so. We did not permit counsel to withdraw the claim. We then allowed Mr. Christine to address his Rule 600 claims in his testimony and acknowledge that Mr. Christine cogently framed an issue worthy of review.

The docket evidences the following pertinent information: The criminal complaint was filed on July 14, 2009. The Defendant was detained on the complaint on July 15, 2009 with bail set by Magisterial District Justice Elwell. The Defendant's trial did not commence until October 5, 2010. By our calculation, the Defendant was not tried until 447 days after his detention on these charges. We then reviewed the docket and the entire file to determine if there are any events that toll the Rule 600 calculation.

We note that the first preliminary hearing date was set for July 24, 2009 at 9:00 a.m. before MDJ Elwell. However, the preliminary hearing was not held until October 20, 2009.

A review of the MDJ's file indicates that the Defendant had his preliminary video arraignment on July 15, 2009, at 2:30 p.m. where bail was set. At the time of the assault, the Defendant was incarcerated in Northampton County Prison. Shortly after the complaint was filed by a Northampton County Correctional Officer, Christopher Nagle, the Defendant was transferred to SCI-Forest. The Defendant was not available for his first scheduled preliminary hearing on July 24, 2009, therefore, it was continued. Additionally, the MDJ's notes indicate that as of July 29, 2009, the Defendant had not applied for a Public Defender, nor had private counsel entered an appearance. The MDJ sent a letter to Northampton County Court Administration requesting that the second preliminary hearing be held at the courthouse and that the Defendant be brought in from SCI- Forest. The new preliminary hearing was set for the

12

September 9, 2009. That hearing was also cancelled as the Defendant was unable to be delivered to Northampton County. A re-scheduled preliminary hearing was set for October 15, 2009, at the Northampton County Courthouse. The Defendant was brought in from SCI- Forest. The hearing was held without defense counsel for the Defendant, as he failed to apply for a Public Defender and did not hire private counsel. In fact, the Defendant chose to represent himself at the preliminary hearing. At the conclusion of the preliminary hearing, the Defendant's case bound over for trial.

By our calculation, the time frame from the continuance for July 24, 2009 until the Defendant had his preliminary hearing on October 15, 2009, is 83 days. At no point during this period, did the Commonwealth request a continuance or was the Commonwealth unable to proceed for the preliminary hearing. The delay was two-fold. First, that the Defendant did not obtain counsel and, as a result, the MDJ gave the Defendant an opportunity to obtain counsel and second, the Defendant, because of these charges, had been transferred out of the jurisdiction, obviously for prison administrative (safety) reasons and, as a result he was not available to the Magisterial District Court, and therefore arrangements had to be made to reschedule and transport the Defendant back to our jurisdiction.

We note that in Bradford, supra., the Supreme Court found that a breakdown in in the Court process where the Magisterial District Judge failed to forward timely the relevant file as required by Pa.R.Crim.P. 547(B), did not support a dismissal of the charges for a Rule 600 violation, as there was no due diligence violation by the Commonwealth. Here, the prison officials, because of the security concerns presented by inmate Christine, transported Mr. Christine out of the jurisdiction and he was not logistically or immediately available for his

13

preliminary hearing. We find that this delay tolls Rule 600 for an additional 83 days.

Thereafter, on October 28, 2009, the Defendant filed a "Motion for Dismissal and Quash of Indictment for Judicial Misconduct and Habeas Corpus". In the body of his petition, Mr. Christine attacked the court's jurisdiction, complained that he had no counsel at the preliminary hearing, asserted that he received no notice of the preliminary hearing because he was at SCI-Forest, and he alleged that a prima facie case was not established at the preliminary hearing.

On November 17, 2009, Mr. Christine's Public Defender filed a Motion for a Remand for a Preliminary Hearing. The matter was scheduled for a hearing before Judge Smith on November 25, 2009. The parties appeared before the Honorable Edward G. Smith on November 25, 2009 and entered an agreed order, in which the Defendant's Motion for Remand was "withdrawn by defense with anticipation of filing a Writ of Habeas Corpus. The hearing on the writ of habeas corpus shall take place at 9:00 a.m. on Friday, December 18, 2009." Thereafter, counsel perfected the oral claim for habeas corpus relief by filing a written Petition for Habeas Corpus on December 10, 2009. The docket indicates that the hearing on the habeas corpus petition was not held until January 15, 2010. The transcript of the Habeas Corpus proceeding was filed on February 1, 2010, which indicates that Judge Smith denied the Petition for Habeas Corpus on the record as of January 15, 2010. We find that the period of time between October 28, 2009, until the resolution of the habeas corpus petition on January 15, 2010, is tolled under Rule 600 as outstanding pre-trial motions were filed and unresolved. By our calculation, 79 days were tolled.

Thereafter, several trial dates were scheduled in which no official court activity occurred until a miscellaneous hearing appearance on July 30, 2010 before the Honorable Paula A.

14

Roscioli. At that time, the District Attorney and defense counsel agreed that the case would be continued and attached for trial on October 4, 2010. The Order was entered by agreement. Apparently, the Defendant was unavailable and detained at SCI-Albion; therefore, the District Attorney presented a writ to transfer the Defendant to Northampton County for his trial. That writ was signed by Senior Judge Lawrence J. Brenner on September 23, 2010. Thereafter, trial commenced. We also note that Judge Roscioli's Order of Court dated July 30, 2010, continued the trial by agreement until October 5, 2010. No record was made at the PCRA hearing indicating that that period was not properly tolled by the court order entered by Judge Roscioli attaching counsel and setting a date certain for trial by agreement of counsel. By our calculation, the period from July 30, 2010 until October 5, 2010 is tolled for a total of an additional 68 days.

Our final calculation is that from the filing of the charges until trial was 447 days, from that figure we subtract the following tolled periods: (1) 83 days - Preliminary Hearing delay, (2) 79 days - Pre-trial motions, and (3) 68 days – agreed trial continuance. Thus, only 217 days expired under Rule 600. There is no Rule 600 violation.

### 4. Castle Defense – Use of Force to Protect Property

As we understood the factual predicate leading up to the alleged assault, the doors to the cells at Northampton County Prison were open and the inmates on the various tiers were permitted to intermingle with each other. Apparently, a group had gathered outside of the Defendant's cell and the alleged assault began either directly in front of or inside the Defendant's opened cell.

15

The Defendant claims that even though he asserted a self-defense claim and received the instruction with regard to justification/self-defense at trial, that his trial counsel was ineffective for failing to request that the "Castle Doctrine" be included in the jury charge.

It is important to note that the Defendant's alleged assault occurred in 2009 and his trial was held in 2010. At the time, we were laboring under the justification defense set forth in 18 Pa.C.S. § 505 enacted in 1972. Under the 1972 version of § 505, the self-defense jury instruction required that the actor was a non-aggressor, possessed reasonable fear of imminent death and did not violate a duty to retreat. Under the 1972 version, all circumstances of the crime were to be evaluated to determine if the actor seeking the justification defense had a reasonable fear of death or serious bodily injury. However, Pennsylvania also recognizes the "Castle Doctrine" which excused any duty to retreat when the actor was attacked within his dwelling or residence.

The Law of Justification in effect at the time that this Defendant committed his crime and at the time he was tried, did not provide the new, expanded Castle Doctrine that became law when 18 Pa.C.S.A. § 505 was amended on August 27, 2011, which expanded the definition of "Castle" to include dwelling, residence, occupied vehicle or place of work.

In our 2010 trial, we would not allow this Defendant, alleged to have committed an aggravated assault in 2009, to expand the Castle Doctrine to include his prison cell which he shared with six other inmates and which he did not have the authority to secure himself. We firmly believed that the 1972 version did not possess the legislative intent to grant inmates in a penal institution a claim that a multi-bed prison cell was to be considered the inmate's private, personal dwelling which would immunize the inmate should another inmate enter his open cell

16

door. Therefore, we made no attempt to fashion a new, special jury instruction for inmate Christine which adopted the common-law Castle Doctrine to encompass his assigned prison cell.

Trial counsel appropriately requested and received the charge for self-defense. We cannot find counsel to be ineffective for failing to advance the request for a novel Castle Doctrine charge related to inmates and prison cells.

## 5. Jury Charge.

The entirety of the Defendant's argument with regard to the error in the jury instructions is set forth in the following three paragraphs:

> Aggravated assault is defined under 18 Pa.C.S.A. § 2702 as follows: "(a) Offense defined. – A person is guilty of aggravated assault if he: (1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly manifesting extreme indifference to the value of human life." However, this Honorable Court informed the jury that "If you accepted the Defendant's testimony that in defending himself, accidentally the victim was slashed, then there is no justification either because the Defendant committed the crime." N.T. 10/7/10, Pg. 88, Ln. 13-14.

> A review of this Honorable Court's comments during discussions in chambers appears to show that the Court meant to say quite the opposite. When this exact topic was broached in chambers, this Honorable Court stated: "If the jury accepts [Christine's] testimony, he committed no crime and there is no defense of justification available."[1] N.T. 10/7/10, Pg. 5, Ln. 9-11.

> It appears that this Honorable Court merely misspoke. However, this interchange of the words "the" and "no" in the Court's instructions to the jury warrants a new trial. "When reviewing a challenge to a part of the jury instructions, the Court must review the charge as a whole to determine if it is fair and complete." Commonwealth v. Hall, 549 Pa. 269 at 303 (1997). Only where there is an abuse of discretion or an inaccurate statement of law is there reversible error. Id.

---

[1] During this discussion in chambers the Court discussed Commonwealth v. Harris, 665 A.2d 1172 (Pa. 1995) and its holding that the assertion of a justification defense was mutually exclusive to a defendant's assertion that an injury was a result of an accident and defendant therein was not in fear of injury. Harris has since been distinguished by Commonwealth v. Childs, 2014 WL 10788813 (Pa. Super. 2014)(Non-Precedential Decision) where the defendant therein accidentally caused SBI/Death while defending himself.

17

See Brief in Support Defendant's PCRA Petition page 2.

The standard of review in a jury charge is to determine whether the trial court committed a clear abuse of discretion or an error of law which controlled the outcome of the case. Commonwealth v. Brown, 911 A.2d 576, 582-83 (Pa.Super 2006).

> "When evaluated jury instructions, the charge must be read as a whole to determine whether it was fair or prejudicial. The trial court has broad discretion in phrasing its instructions... so long as the law is clearly, adequately, and accurately presented to the jury for its consideration."

Commonwealth v. Hawkins, 787 A.2d 292, 301 (Pa. 2001). "Error will not be predicated on isolated excerpts. Rather it is the general effect of the charge that controls." Commonwealth v. Myers, 545 A.2d 309, 314 (Pa. Super. 1988).

First, we must note that we had a jury charge conference with counsel in which we discussed the jury charge for the defense of justification, including the application of the holding in Commonwealth v. Harris, 665 A.2d 1172 (Pa. 1995) and the language that is now at issue. Counsel agreed to the charge that we provided. (See Trial Notes of Testimony Vol III, pp.3 – 11.) During our initial jury charge, no objections were made and the jury was sent out to deliberate. We believe that the charge we gave to the jury reflected the law and our pre-charge conference. Defense Counsel, Appellate Counsel and PCRA Counsel did not raise any complaints regarding our initial charge, including the justification charge. (See Notes of Jury Trial Vol III pp. 44 – 77).

The alleged error raised by PCRA counsel appears at a subsequent charging proceeding after the jury returned a question related to the justification defense and the definition of serious

18

bodily injury.[2] We believe that we accurately recited the law and our jury charge with regard to justification. After our second attempt to provide instructions to the jury regarding justification, we brought counsel again to side bar and no objections were raised with regard to our instructions.

The sum total of the alleged error by PCRA counsel is the following quote from his Brief, **"It appears that this Honorable Court merely misspoke. However, this interchange of the word "the" and "no" in the Court's instructions to the jury warrants a new trial."**

We believe that it is important to read the entirety of that section of the record to place this claim in perspective. It is as follows:

> "Also, if you accept the defendant's testimony that he was a person who was innocent in this matter, that he was in his cell, and that the victim came to his cell with hot coffee and a razor, and that the victim, Mr. Misero, was the person who provoked the assault, and, in fact, attempted to slash the defendant with the razor. Eventually the defendant disarmed Mr. Misero, they disengaged, the defendant walked over, picking up the razor, he was now armed, and the defendant then was under attack again by Mr. Misero a second time, and that in defending himself, accidentally the victim was slashed, then there is no justification either because the defendant committed the crime. He has no intent to injure the victim so you don't have to consider justification if you believe the defendant's story."

N.T. 10/7/10, p.88.

We cannot deny that the transcription of our jury charge on Page 88, Line 13-14, recites the phrase "the Defendant committed the crime." However, we believe that we did not misspeak, but in fact we said "the Defendant committed no crime". Otherwise, the entire sentence appears to be "logical gibberish." It makes no sense that the court reporter's transcription was accurate. We had previously, accurately made the statement to the jury that

---

[2] Frankly, this would not have been an issue, if we had the authority to provide the jury with a written copy of our initial charge.

had if the Defendant accidently slashed the victim (as he reported in his testimony) then the Defendant could not have committed the crime of aggravated assault and the defense of justification would not need to be considered by the jury. We believe that we provided the same instruction in our first charge as we did in our second charge referenced on Page 88 of the Transcript. Other than the apparent error of "the" rather than "no", the section is consistent with the charge required as well as our discussion with the parties regarding the import of Commonwealth v. Harris in delineating between a justification defense and a lack of intent.

We cannot account for the Scribner's error.

However, even if the error did occur, however, it would still be considered an "isolated excerpt" of the transcript which is not a basis to determine error. Commonwealth v. Myers, *supra*. Taken as a whole, the jury instruction adequately conveyed the law to the jury.

We next note that the alleged charging error was also not raised during the appellate process. Obviously, this record was reviewed with a fine tooth comb. There are two Opinions from the Superior Court and eventually, a review and an Opinion by the Supreme Court. Obviously, this issue, if it existed, was waived on appeal.

Therefore, the issue becomes whether or not trial counsel, Susan Hutnik, was ineffective for failing to raise the objection and, if so, the extent of any prejudice, because this claim was waived for post-sentence claims because of the failure to include it in the direct appeal.[3]

Thus, our next determination is whether or not trial counsel was ineffective for not pursuing this claim. The standard for performance of trial counsel (and appellate counsel) is a three prong performance and prejudice test set out in Commonwealth v. Pierce, 527 A.2d 973

20

(Pa. 1987), which continues to be the legal standard for evaluating such claims. Under Pierce, the PCRA petitioner must demonstrate: (1) the claim of ineffectiveness has arguable merit, (2) that counsel did not have a reasonable basis for the act or omission in question, and (3) petitioner must establish prejudice which demonstrates that "but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different." See Commonwealth v. Pierce, Supra; Commonwealth v. Douglas, 645 A.2d 226, 230 (Pa. 1994); Commonwealth v. Kimball, 724 A.2d 326, 333 (Pa. 1999).

The Supreme Court in Commonwealth v. Daniels, 963 A.2d 409, 430 (Pa. 2009), addressed the legal standard for review of an allegedly defective jury charge. The Daniels Court held:

> It is well-settled that when reviewing the adequacy of a jury instruction, we must consider the charge in its entirety to determine if it is fair and complete. *Commonwealth v. Cooper*, 596 Pa. 119, 941 A.2d 655, 669 (2007); *Commonwealth v. Murphy*, 559 Pa. 71, 739 A.2d 141, 146 (1999); *Commonwealth v. Stokes*, 532 Pa. 242, 615 A.2d 704, 709 (1992); *Commonwealth v. Prosdocimo*, 525 Pa. 147, 578 A.2d 1273 (1990). The trial court has broad discretion in phrasing the charge and the instruction will not be found in error if, taken as a whole, it adequately and accurately set forth the applicable law. *Prosdocimo, supra.*

Id. at 430.

Upon inquiry by PCRA counsel, Ms. Hutnick had no answer to PCRA counsel's inquiry as to why no objection was raised to our charge. (Notes of Testimony, July 11, 2016 pp. 30 – 33). If our belief is incorrect and we did misread our justification charge on page 88 of the Trial transcript, the trial counsel should have raised an objection.

Still, we note that under Commonwealth v. Daniels, given the totality of our entire

---

[3] Also, we note that the PCRA transcript incorrectly references PCRA counsel asking Mr. Lawser to review the defective jury instruction on "page 48." This was clearly another transcription error, as PCRA counsel actually provided Mr. Lawser with page 88 for his review.

21

charge, any reasonable person would understand that the Defendant had available to him justification – self-defense – in this case. It had been reviewed and discussed by the Defendant in his testimony, by Defense Counsel and the ADA in their closing arguments, and by the Court in its initial charge and then we addressed it again to the jury's satisfaction when we charged the jury a second time after they came back into the courtroom. Thus, the jury had the charge of aggravated assault properly charged on two occasions. There is no reasonably possibility that this jury found that this Defendant accidentally sliced the victim while he was defending himself and then also found that the elements of aggravated assault had been established, because based on our charge there could be no conviction for the intentional crime of aggravated assault for an accidental injury. We further note that our charge for aggravated assault was, at all times, consistent with the suggested standard charge. Our charge made it clear that if justification existed (the Defendant acted in self-defense), there could be no conviction for aggravated assault. To accept the Defendant's argument that based on the one line on page 88, that the jury could have found that the Defendant acted in self-defense and accidentally sliced the victim, but that the court was directing that the jury find that he committed the crime anyway, is not credible given the entire charging record. We cannot find actual prejudice, because the Defendant cannot establish a reasonable probability that the outcome of the proceedings would have been different, absent the one word error in the trial transcript.

In summary, we believe that the entirety of the charging record established that the jury was provided with an accurate summary of the applicable law, that there is no prejudice in the record which warrants relief, and most importantly, based upon the charge of the court, a reasonable determination of guilt was made.

22

The Defendant is not entitled to PCRA relief.

BY THE COURT:

_____
STEPHEN G. BARATTA, J.